UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

LIBERTY MUTUAL INSURANCE COMPANY,

                    Plaintiff,                    13-cv-3755 (JGK)
                                                  15-cv-1141 (JGK)
        v.
                                                  OPINION AND ORDER
THE FAIRBANKS COMPANY,

                    Defendant/Plaintiff,

        v.

NATIONAL UNION FIRE INSURANCE OF
PITSSBURG, PA; LIBERTY MUTUAL
INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; AXA ROYALE BELGE;
THE HARTFORD INSURANCE COMPANY;
TRAVELER'S CASUALTY & SURETY
COMPANY,

                    Defendants.

————————————————————————————

JOHN G. KOELTL, District Judge:

        This case involves two actions that have been consolidated

by this Court: (1) an action filed by Liberty Mutual Insurance

Company ("Liberty") on June 3, 2013, in the Southern District of

New York (the "New York Action") against The Fairbanks Company

("Fairbanks"), Dkt. No. 13-cv-3755, and (2) an action filed by

Fairbanks on June 24, 2013, in Georgia state court (the "Georgia

Action") against National Union Fire Insurance Company of

Pittsburgh ("National Union"), Liberty, Fireman's Fund Insurance

Company ("Fireman's Fund"), AXA Royale Belge ("AXA"), The

Hartford Insurance Company ("Hartford"), Travelers Casualty &

Surety Company ("Travelers"), and the Georgia Insurers Insolvency Pool (the "Pool").[1] The Georgia Action was removed to the Northern District of Georgia, and on February 18, 2015, the Northern District of Georgia transferred the Georgia Action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). This Court has diversity of citizenship jurisdiction over the consolidated case pursuant to 28 U.S.C. § 1332.

This case concerns insurance coverage for Fairbanks for liability arising from asbestos-related personal injury actions (the "Asbestos Actions"). Fairbanks entered into insurance policies with the insurers between 1974 and 1998. Beginning in 2002, Fairbanks was sued in the Asbestos Actions. Between 2005 and 2013, the insurers collectively paid Fairbanks' defense costs and funded settlements. In May 2013, one of the insurers, Lumbermens Mutual Insurance Company ("Lumbermens") became insolvent. The insolvency led to disputes over who should bear the share of liability and defense costs previously borne by Lumbermens—the so called Lumbermens' "orphan share." The current litigation seeks to determine the fate of Lumbermens' orphan share and to allocate indemnification responsibility and defense costs among the insurers. In the New York Action, Liberty sought a judgment declaring its allocable share of costs and

---

[1] The Northern District of Georgia dismissed the Pool as a defendant, and the Pool is no longer a party to this case. The insurers are referred to as the "insurer defendants" or "the insurers" throughout this opinion.

indemnification of Fairbanks with respect to settlement payments or judgments in the Asbestos Actions. Dkt. 13-cv-3755, Doc. 1. In the Georgia Action, Fairbanks sued National Union and Liberty for breach of contract and requested declaratory relief against all the insurers in connection with Fairbanks' claim for insurance coverage in the Asbestos Actions. Dkt. 15-cv-1141, Doc. 1 ¶¶ 1-2. Pursuant to this Court's March 11, 2015 Initial Case Management Plan, the parties were permitted to move for summary judgment on initial legal issues: how to allocate the indemnity costs for Lumbermens' orphan share, how to allocate the insurers' individual responsibility for indemnity and defense costs, and whether asbestos exclusions in certain policies were applicable and enforceable. Dkt. 13-cv-3755, Docs. 50, 63.

The Asbestos Actions implicate what would typically be considered "progressive injury" claims because the continuous occurrence that resulted in injury triggers coverage under more than one policy. As a result, the plaintiffs' alleged exposure to asbestos cannot be easily attributed to a time period covered by a particular insurance policy. In re Prudential Lines Inc., 158 F.3d 65, 84 (2d Cir. 1998) ("When exposure, and therefore the cumulative injury, spans several policies, the harms resulting from exposure to asbestos cannot easily be assigned to a particular policy."). Courts have addressed progressive

injuries by allocating liability among insurers under the "all sums" approach or the "pro rata" approach. Under the all sums or joint and several liability approach, "(i) the insured selects a single policy from which to seek indemnification, (ii) that insurer pays the claim, and (iii) then the insurer seeks contribution from other liable insurers . . . ." Id. Under the pro rata approach, the liability would be allocated among triggered policies based on "proportion of exposure occurring during the policy period or time on the risk." Id.[2]

Six motions for partial summary judgment are currently pending. The motions generally seek declarations as to whether the liability of the insurers should be determined on a "pro rata" or "all sums" basis, how the Lumbermens' orphan share should be allocated, and whether the asbestos exclusion in certain policies should be applied to the Asbestos Actions.

At bottom, allocating indemnity among the insurers is the primary legal issue in the motions for summary judgment. Fairbanks argues that the law governing the various policies supports applying joint and several liability or the all sums

---

[2] The parties agree that the coverage provisions in the insurance policies in this case are substantially similar, with a few exceptions that are detailed below. The standard policy language provides that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this policy applies caused by an occurrence[.]" Russey Aff., Dkt. 15-cv-1141, Doc. 107, Ex. B-1, at LM_000015. And "'bodily injury' means bodily injury sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom[.]" Id. at LM_000018 (emphasis added).

approach such that each insurer must cover Fairbanks' defense
and indemnity costs, up to the limits of each policy, and that
the costs attributed to Lumbermens' orphan share should be
included in the costs borne by the other insurers. The insurers
argue that they are only liable for the indemnity costs arising
from the time each insurer was "on the risk"— only for the
period of the policy coverage when the injury occurred. The
insurers also contend that Fairbanks should bear Lumbermens'
orphan share.

I.

The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986). "[T]he trial court's task at the summary
judgment motion stage of the litigation is carefully limited to
discerning whether there are any genuine issues of material fact
to be tried, not to deciding them. Its duty, in short, is
confined at this point to issue-finding; it does not extend to
issue-resolution." Gallo v. Prudential Residential Servs. Ltd.
P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the initial burden of "informing the
district court of the basis for its motion" and identifying the

matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## II.

The parties do not dispute the following facts unless otherwise noted.

Fairbanks, the defendant in 13-cv-3755 and the plaintiff in 15-cv-1141, is a Georgia corporation.[3] Fairbanks' 56.1 Stmt. on Initial Issues ¶ 1. In the 1980s, Fairbanks was engaged in a

---

[3] The procedural history of this litigation is set forth in greater detail in Liberty Mutual Insurance Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 389-90 (S.D.N.Y. 2014).

valve-manufacturing business that was based in New York. See id. ¶ 21. Fairbanks has since stopped manufacturing valves, sold its business, and redomesticated to Georgia in 2002. Id. ¶¶ 21-23. Fairbanks has been named as a defendant in several lawsuits brought by plaintiffs alleging injuries from exposure to asbestos. Id. ¶ 12. The packings and gaskets in the valves Fairbanks manufactured prior to 1984 allegedly contained asbestos. Id. ¶ 15.

Fairbanks purchased insurance policies issued by several insurers. Liberty issued comprehensive general liability policies and umbrella excess liability policies (together "the Liberty policies") for annual periods from January 1, 1974 to January 1, 1982. Liberty's 56.1 Stmt. ¶ 4; Fairbanks' 56.1 Resp. to Liberty's Mot. ¶ 4. Other liability insurers, including Fireman's Fund, Travelers, National Union, Hartford, Lumbermens, and AXA issued insurance policies for the years between 1982 and 1998, although there were also periods when Fairbanks was uninsured. Liberty's 56.1 Stmt. ¶ 8; Willard Aff. ¶ 16; Fairbanks' 56.1 Stmt. on Initial Issues ¶ 62.

Liberty is a Massachusetts corporation with its principal place of business in Massachusetts. Fairbanks' 56.1 Stmt. in Liberty Mot. ¶ 2. Fireman's Fund is a California corporation with its principal place of business in California. Fairbanks' 56.1 Stmt. on Initial Issues ¶ 2. Hartford is a Connecticut

corporation with its principal place of business in Connecticut. Id. ¶ 3. National Union is a Pennsylvania corporation with its principal place of business in New York. Id. ¶ 4. Travelers is a Connecticut corporation with its principal place of business in Connecticut. Id. ¶ 5. AXA is a corporation incorporated under the laws of Belgium with its principal place of business in Brussels, Belgium. Fairbanks' 56.1 Stmt. in AXA motion ¶ 2.

In 2002, Fairbanks notified the insurers of the Asbestos Actions filed against Fairbanks. Fairbanks' 56.1 Stmt. on Initial Issues ¶ 26. The insurers agreed to an interim cost-sharing agreement for defense and indemnity costs. Id. ¶¶ 29-30. Fairbanks initially contributed to the indemnity costs, but ceased doing so in 2005. Id. ¶¶ 30-31, 37. The insurers subsequently developed a cost-sharing arrangement for indemnity costs and did not assign a percentage to Fairbanks. Id. ¶ 40. There is no dispute that the insurers covered all expenses arising from litigation and settlements during the period from 2005 to 2013. See id. ¶¶ 42-46, 60.[4]

---

[4] The insurers admit that Fairbanks has not contributed to the cost of defense or indemnity of asbestos claims since September 21, 2005. National Union's Resp. to Counterstatement ¶ 2. The insurers, however, dispute the effect of Fairbanks' refusal to pay to the extent Fairbanks argues that its refusal to pay shows that it is not obligated to participate in defense or indemnity costs. The insurers contend that they acted under a full reservation of rights and repeatedly confirmed their objections in writing. E.g., Fireman's Fund's 56.1 Resp. ¶ 40.

On May 10, 2013, Lumbermens was placed in liquidation in Illinois. Id. ¶ 51. Fairbanks informed the insurers that it would not pay any shortfalls in the settlements that arose out of Lumbermens' insolvency. Id. ¶ 53. Liberty informed Fairbanks that it wished to negotiate a new scheme among the insurers that would require the insurers to pay only their pro rata share of the indemnity and costs. Id. ¶ 56. After Lumbermens was placed in liquidation, Fairbanks and the insurers disputed whether the insurers must assume responsibility for Lumbermens' orphan share.

### III.

### A.

The issue of allocation of indemnity under the insurance policies requires answering the threshold question of which state law should apply to the different insurance policies. A court sitting in diversity must look to the choice of law rules of the forum state. IBM v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). As described in detail below, Georgia choice of law rules govern the motions for summary judgment by and against the non-Liberty insurers in 15-cv-1141, the case Fairbanks initiated in Georgia and which was transferred to this district pursuant to 28 U.S.C. § 1404(a). See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). But with respect to Liberty's motion for summary judgment and Fairbanks' motion for summary

judgment against Liberty, the parties agree that New York choice
of law rules should apply because New York is the forum state
for this action which was brought in New York.

     Under New York law, courts need not undertake a choice of
law analysis unless there is a conflict between the applicable
laws of the relevant jurisdictions, and in the absence of a
conflict, a court may apply the substantive law of the forum.
IBM, 363 F.3d at 143. The New York choice of law analysis in a
contract dispute focuses on the "center of gravity or grouping
of contacts." Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.,
819 F. Supp. 2d 247, 255 (S.D.N.Y. 2011) (internal citations and
quotation marks omitted). The "center of gravity" in an
insurance contract dispute is generally the state where the
insured risk is located. But where the covered risks are spread
over multiple states, other factors should be considered such as
where the policy was delivered and issued, where the premiums
were paid, and the insured's place of business or domicile. The
insured's domicile is "considered a proxy for the principal
location of the insured risk and is the controlling factor in
the analysis." Fireman's Fund Ins. Co. v. Great Am. Ins. Co., 10
F. Supp. 3d 460, 496 (S.D.N.Y. 2014) (internal quotation marks
and citations omitted). New York is the center of gravity because
the Liberty policies were delivered to Fairbanks' office and
principal place of business at the time in New York, the

10

premiums were paid to Liberty's office in New York, and Fairbanks' valve manufacturing operations were based in New York. Fairbanks' 56.1 Stmt. in Liberty Mot. ¶¶ 2, 68; Liberty's 56.1 Resp. ¶ 2; Liberty's 56.1 Stmt. ¶ 4; Fairbanks' 56.1 Resp. to Liberty's Mot. ¶ 4. Therefore, the Liberty policies are governed by New York substantive law.

Under New York law, insurance policies are interpreted according to general rules of contract interpretation. Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012). Courts must "give effect to the intent of the parties as expressed in the clear language of their contract." Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012). Accordingly, summary judgment on the meaning of an insurance policy is appropriate when the terms of a policy are unambiguous. Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

"The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465–66 (S.D.N.Y. 2010) (collecting cases); accord In re Prudential Lines Inc., 158 F.3d at 77. Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable

basis for a difference of opinion." Olin, 704 F.3d at 99
(internal citation and quotation marks omitted). Where, on the
other hand, contract terms are "capable of more than one meaning
when viewed objectively by a reasonably intelligent person who
has examined the context of the entire integrated agreement and
who is cognizant of the customs, practices, usages and
terminology as generally understood in the particular trade or
business," the contract terms are ambiguous and summary judgment
is inappropriate. Id. (internal citation and quotation marks
omitted). "[W]here consideration of the contract as a whole will
remove the ambiguity created by a particular clause, there is no
ambiguity." Law Debenture Tr., 595 F.3d at 467 (quoting Readco,
Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir. 1996));
see also Hudson-Port Ewen Assocs., L.P. v. Kuo, 578 N.E.2d 435,
435 (N.Y. 1991).

    "If a contract is unambiguous, courts are required to give
effect to the contract as written and may not consider extrinsic
evidence to alter or interpret its meaning." Consarc Corp. v.
Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993);
accord Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309
F.3d 76, 83 (2d Cir. 2002); W.W.W. Assocs., Inc. v.
Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). If the meaning of
contractual language is otherwise plain, the language "does not
become ambiguous merely because the parties urge different

interpretations in the litigation." Law Debenture Tr., 595 F.3d
at 467 (collecting cases). Instead, each party's interpretation
must be reasonable. Id. An interpretation is not reasonable if
it strains the policy language "beyond its reasonable and
ordinary meaning." Id. (citing Bethlehem Steel Co. v. Turner
Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957)); see also Two
Farms, Inc. v. Greenwich Ins. Co., 993 F. Supp. 2d 353, 359
(S.D.N.Y. 2014), aff'd, No. 14-318, 2015 WL 6079559 (2d Cir.
Oct. 16, 2015).

Fairbanks and Liberty each contend that New York contract
and insurance law favors their respective positions on the issue
of all sums versus pro rata allocation. Fairbanks argues that
under New York law, an all sums allocation should apply to the
Liberty policies, but Liberty argues that New York law supports
applying a pro rata allocation of liability to the Liberty
policies. The all sums approach would allow Fairbanks to collect
the entire amount of the damage from each insurer up to the
amount of the applicable policy limit; and the insurers would be
jointly and severally liable for indemnifying Fairbanks. Consol.
Edison Co. of N.Y. v. Allstate Ins. Co., 774 N.E.2d 687, 694
(N.Y. 2002); U.S. Fid. & Guar. Co. v. Treadwell Corp., 58 F.
Supp. 2d 77, 96-97 (S.D.N.Y. 1999) (collecting cases). Any
insurer who paid more than its proportionate share would then
have the opportunity to sue other insurers who were liable for

13

the same injury. Under the New York pro rata approach, liability is spread across the different insurers and policies for the time on the risk. U.S. Fid., 58 F. Supp. 2d at 96 ("Under this approach, the insured can recover only a share of its over-all loss from any one insurer, that share to be determined on the basis of some facially objective factor, such as the insurer's proportion of time on the risk or proportion of total policy limits."). The choice between the two approaches determines whether the insurers or the insured bears the risk of the insolvency of any individual insurer. Id.

Under well-established principles of contract interpretation under New York law and New York case law on allocation of indemnity, the Liberty policies should be construed as providing for pro rata allocation of indemnity. In Consolidated Edison, the insurance policy provided that the insurer would indemnify the "insured for all sums which the insured shall be obligated to pay by reason of the liability"; the policy applied "only to 'occurrences' as defined herein, happening during the policy period." 774 N.E.2d at 693. The New York Court of Appeals rejected an all sums approach, concluding that joint and several liability was inconsistent with the unambiguous language of the policies. Id. at 693-95. The Court of Appeals reasoned that the policy provided for indemnification for "liability incurred as a result of an accident or occurrence

during the policy period, not outside the period" and that focusing on "all sums" would "read this important qualification out of the policies." Id. at 695.

In Stonewall Insurance Company v. Asbestos Claims Management Corporation, the policy at issue provided that the insurers agreed to indemnify the insured for "all sums" that the insurer became legally obligated to pay as damages as a result of bodily injury or property damage caused by an occurrence. An "occurrence" was defined as "an accident, or a continuous or repeated exposure to conditions which results, during the policy period, in personal injury. . . ." 73 F.3d 1178, 1187-88 (2d Cir. 1995), as modified by 85 F.3d 49 (2d Cir. 1996). The parties in Stonewall did not object to the pro rata methodology, but the insured objected to having to cover the costs arising from injuries that occurred in years when the insured was underinsured. Id. at 1202.  The Court of Appeals concluded that "proration-to-the-insured is a sensible way to adjust the competing contentions of the parties in the context of continuous triggering of multiple policies over an extended span of years." Id. at 1203. Proration to the insured was reasonable for the years the insured did not purchase insurance or was underinsured. Id.; see also U.S. Fid., 58 F. Supp. 2d at 104.

Most recently in Liberty Mutual Fire Insurance Co. v. J.&S. Supply Corp., the district court analyzed policy language which

provided that the insurer "pay on behalf of the insured all sums
which the insured shall become legally obligated to pay as
damages because of bodily injury or property damage to which
this insurance applies, caused by an occurrence." Memorandum &
Order, Dkt. No. 13-cv-4784 (VSB), Doc. 63, at *13 (S.D.N.Y. June
29, 2015). While the policy was not limited to an "occurrence
during the policy period," just as the Liberty policies in this
case, it did define "bodily injury" as "bodily injury, sickness
or disease sustained by any person which occurs during the
policy period, including death at any time resulting therefrom."
Id. Even without the limitation that the occurrence causing the
injury must have taken place during the policy period, the
district court concluded that under New York law the policy
should be construed as providing for pro rata allocation. Id. at
13-14 (citing Consol. Ed., 774 N.E.2d at 695 and Roman Catholic
Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh,
991 N.E.2d 666, 676 (N.Y. 2013)).

    Fairbanks argues that an all sums approach should apply and
relies on a decision by the Delaware Court of Chancery, Viking
Pump, Inc. v. Century Indemnity Co., where the court, applying
New York law, concluded that the "during the policy period"
language did not limit the policy coverage to the years of
coverage. 2 A.3d 76, 118 (Del. Ch. 2009). The court determined
that the all sums approach of joint and several liability for

the insurers should apply. The court reasoned that although several New York opinions embraced a pro rata approach in the context of particular policy language, New York was not a "pro rata state." Id. at 119.

The pro rata approach should apply to the Liberty policies at issue in this case. The policy terms interpreted in Stonewall, Consolidated Edison, and J.&S. Supply are virtually indistinguishable from the terms of the Liberty policies. The Liberty policies provide that Liberty "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this policy applies, caused by an occurrence." Russey Aff., Dkt. 15-cv-1141, Doc. 107, Ex. B-1, at LM_000015. Bodily injury means "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." Id. at LM_000018 (emphasis added). These terms are similar to the standard insurance provisions that the New York Court of Appeals and the Second Circuit Court of Appeals concluded were unambiguous provisions providing for pro rata allocation of responsibility among insurers. See Consol. Edison, 774 N.E.2d at 693-94; Stonewall, 73 F.3d at 1202-03.

Fairbanks attempts to distinguish Second Circuit precedent and New York case law on several grounds. Fairbanks argues that

17

the Liberty policies define "bodily injury" as limited by "during the policy period" and does not state that the "occurrence" must occur "during the policy period" like the policy in Consolidated Energy. Consol. Edison, 774 N.E.2d at 693. But as reflected in J.&S. Supply, this is a distinction without a difference. See 13-cv-4784, at *13-*14. The Liberty policies are unambiguous and limit coverage to injury occurring within the finite period of the policy. See id. Regardless of whether it was the "occurrence" or the "bodily injury" that must occur during the policy period, various state and federal courts have concluded that proration of liability is required. See id.; Roman Catholic Diocese of Brooklyn, 991 N.E.2d at 676.

Fairbanks also contends that the non-cumulation provision in the Liberty umbrella policies are inconsistent with the pro rata method of allocation. The non-cumulation provision prevents an insured from stacking coverage under multiple policies from Liberty when the same occurrence gives rise to personal injury or other damages and triggers more than one policy. See Russey Aff., Dkt. 15-cv-1141, Doc. 107, Ex. B-2, at LM_000212. Fairbanks argues that under Viking Pump, the provision "means that an occurrence triggering multiple policies is viewed under the policy as causing only a single, indivisible injury," is inconsistent with pro rata allocation across insurers, and requires applying joint and several liability. Fairbanks' Mem.

18

of Law in Supp. of Mot. against Liberty at 11 (citing Viking Pump, 2 A.3d at 123).

But as Fairbanks recognizes, the Delaware Supreme Court certified the question of whether non-cumulation provisions are inconsistent with pro rata allocation to the New York Court of Appeals. In re Viking Pump, Inc., No. 518, 2014, 2015 WL 3618924, at *3 (Del. June 10, 2015), certified question accepted, 37 N.E.3d 104 (N.Y. 2015). The Delaware Court of Chancery's decision in Viking Pump, therefore, has limited persuasive value and Fairbanks does not rely on any other authority. Moreover, the district court in J.&S. Supply rejected the same argument regarding a nearly identical non-cumulation provision and concluded that the non-cumulation provision would only reduce the payment to the insured when multiple policies issued by the same insurer are triggered. 13-cv-4784, at *16 & n.13.

Fairbanks also argues that Liberty's conduct shows that it accepted the all sums method for several years and paid for injuries that occurred during the periods when its policies were not triggered. Liberty argues that its payment of indemnity and defense costs was at all times subject to a reservation of its rights. Because the policies unambiguously provide that Liberty must indemnify for bodily injury occurring during the policy period on a pro rata basis, it is unnecessary to consider the

parties' extrinsic evidence of past dealings. See R/S Assocs. v. N.Y. Job Dev. Auth., 771 N.E.2d 240, 242 (N.Y. 2002). Moreover, the historical record does not support Fairbanks' position. Fairbanks initially contributed to settlements of certain Asbestos Actions, and when it ceased doing so, the insurers assumed the full indemnity burden but only pursuant to reservations of rights.

Fairbanks also contends that the insurance policies give Liberty the exclusive right to decide whether to settle cases, and as such Liberty has an obligation to fund the settlements completely. But Fairbanks expressly agreed to give Liberty the discretion to settle actions, and Fairbanks does not cite any authority supporting the proposition that an insurer's discretion to settle actions precludes the insurer from enforcing express policy provisions that limit the extent of the insurer's liability. See J.&S. Supply, 13-cv-4784, at *20-*21.

Therefore, Fairbanks' motion for summary judgment declaring that the all sums method applies to the Liberty policies is denied. Liberty's motion for summary judgment for a declaration that the Liberty policies are subject to pro rata allocation of indemnity is granted.[5]

---

[5] Liberty made it clear at the argument of the motions that it was not seeking any summary judgment with respect to defense costs. While certain other defendants did seek a ruling with respect to defense costs, for example, on the basis of an equitable apportionment of defense costs already expended,

**B.**

Fairbanks and Liberty also dispute which party should bear the burden of Lumbermens' orphan share. Fairbanks argues that even if the pro rata approach applies to the Liberty policies, a New York court would apply the Georgia insurer insolvency statute and conclude that an insolvent insurer's indemnity share should be attributed to a solvent insurer, not to the insured. The Georgia Code provides that

> any person having a claim against a policy or an insured under a policy issued by an insolvent insurer, which claim is a covered claim and is also a claim within the coverage of any policy issued by a solvent insurer, shall be required to exhaust first his or her rights under such policy issued by the solvent insurer. The policy of the solvent insurer shall be treated as primary coverage and the policy of the insolvent insurer shall be treated as secondary coverage.

O.C.G.A. § 33-36-14(a).[6] As explained below, the Georgia insurer insolvency statute does not conflict with New York's approach of

---

there are issues of fact that would preclude such an apportionment at this time.

[6] Section 33-36-14 is part of Chapter 36 which established the Georgia Insurers Insolvency Pool. Chapter 36 is contained in Title 33, Insurance, in the Georgia Statutes and Court Rules. The Georgia Insurers Insolvency Pool is funded by insurers who do business in Georgia and provides protection for residents in Georgia who are insured by insurance companies that become insolvent, even if they are placed in liquidation in other states. However, residents may not obtain duplicative recoveries under the Georgia statute and the insolvency funds of any other state. O.C.G.A. § 33-36-10. For the purposes of the present motion, the parties do not dispute that, if its motion is decided under Georgia law, Fairbanks, a resident of Georgia, would have whatever benefit the Georgia statute provides.

requiring the insured to bear the pro rata share of any indemnity otherwise borne by the insolvent insurer.

Under New York law, "[a]llocation results in the insured bearing the risk of the insurers' inability to pay . . . . There is logic in having the risk such defalcation fall on the insured, which purchased the defaulting insurer's policy, rather than on another insurer which was a stranger to the selection process." Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 323 (2d. Cir. 2000). Proration to the insured requires the insured to pay whatever difference arises from insufficient insurance or exhausted insurance, save for circumstances where insurance was not available. See Stonewall, 73 F.3d at 1203-04. In this case, the shortfall arises from an insurer's insolvency, not because insurance was unavailable to Fairbanks. "If one of the insurers is insolvent, the insured is saddled with the insurer's share of liability." U.S. Fid., 58 F. Supp. 2d at 96. Thus, under New York law, Lumbermens' orphan share should be prorated to Fairbanks as the insured.

Fairbanks argues that even if this Court applies New York law generally to the allocation of indemnity, New York would still recognize and apply the Georgia insurer insolvency statute which is designed to provide protection for Georgia residents who are insured by insurance companies who become insolvent. Liberty responds that Fairbanks presumes a conflict between New

York and Georgia law which does not exist and that it is
unlikely that a New York court would choose Georgia law over its
own law. Fairbanks' argument fails because a New York court is
unlikely to choose the governmental interest of another state
above its own in the context of the uniform application of
insurance law, particularly where, as explained above, the
center of gravity for the Liberty policies is New York. New York
has a significant interest in regulating the conduct of
insurance companies doing business in New York, particularly
where as in this case, the insured's risk is widespread. See
MacLaren Europe Ltd. v. ACE Am. Ins. Co., 908 F. Supp. 2d 417,
425 (S.D.N.Y. 2012), aff'd, 545 F. App'x 50 (2d Cir. 2013).

     In any event, the Georgia insurer insolvency statute is
consistent with pro rata allocation of indemnity. The plain
language of the Georgia statute makes clear that if a claim is
covered by a policy issued by an insolvent insurer and the
"claim is a covered claim and is also a claim within the
coverage of any policy issued by a solvent insurer" then that
solvent insurer should be the primary insurer and the insolvent
insurer would be the excess insurer. O.C.G.A. § 33-36-14(a)
(emphasis added). There must be an overlap in the coverage of
the policies of the insolvent insurer and solvent insurer. In
this case, Fairbanks does not argue that Liberty was an insurer
providing coverage during the time period for which Lumbermens

23

was also on the risk as Fairbanks' insurer. Liberty appears to
have insured Fairbanks from 1974 to 1982, and Lumbermens insured
Fairbanks from 1987 to 1990 and 1992 to 1993. Willard Aff. ¶ 16.
Under the Georgia insurer insolvency statute, Liberty is not a
primary insurer in any year where Lumbermens was also an insurer
and would not be responsible for Lumbermens' orphan share. Under
the pro rata approach to insurance policies covering progressive
injuries, insurers are only liable for their pro rata share
based on their time on the risk. Liberty and Lumbermens were
never on the risk at the same time, and Liberty could not be the
primary insurer to Lumbermens' excess insurer for any year under
the Georgia statute.

Fairbanks contends, however, that the Georgia statute
should be interpreted as overruling the pro rata approach and
requiring joint and several liability for all insurers who were
on the risk at any time with an insolvent insurer in Georgia.
There is no case in Georgia which supports that interpretation
of the Georgia statute, and there is nothing in the language of
the statute that requires that result. Fairbanks argues that its
interpretation of the statute is supported by the history of a
similar New Jersey statute, but that history actually supports
the conclusion that the Georgia statute, as currently drafted,
does not overrule the pro rata allocation method among insurers
for progressive injuries.

In New Jersey, the common law framework for allocation of
indemnity across multiple insurers in progressive injury cases
previously provided that insurers were responsible on a pro rata
basis based on the years of coverage and limits under the
policy. Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab.
Ins. Guar. Ass'n, 74 A.3d 860, 868-69 (N.J. 2013). Courts
applied pro rata allocation even when one of the insurers was
rendered insolvent; under the New Jersey insolvency statute, the
solvent insurers were only liable for the time they were on the
risk. Id. at 869-70; see Sayre v. Ins. Co. of N. Am., 701 A.2d
1311, 113-14 (N.J. App. Div. 1997). In Farmers, the New Jersey
Supreme Court concluded that an amendment to the insolvency
statute specifically incorporated an exhaustion requirement to
the insolvency statute such that the policies of all solvent
insurers had to be exhausted first. 74 A.3d at 871. The New
Jersey insurer insolvency statute now provides that "[a]ny
person having a claim  . . . under an insurance policy other
than policy of an insolvent insurer shall be required to exhaust
first his rights under that other policy." N.J. Stat. § 17:30A-
12b. The amendment added the definition of "exhaust":

> "Exhaust" means with respect to other insurance, the
> application of a credit for the maximum limit under
> the policy, except that in any case in which
> continuous indivisible injury or property damage
> occurs over a period of years as a result of exposure
> to injurious conditions, exhaustion shall be deemed
> to have occurred only after a credit for the maximum

> limits under all other coverages, primary and excess,
> if applicable, <u>issued in all other years has been</u>
> <u>applied</u>."

N.J. Stat. § 17:30A-5 (emphasis added). The New Jersey Supreme Court concluded that this amendment specifically repealed the rule that allocated indemnity to insurers based on years on the risk. <u>Farmers</u>, 74 A.3d at 871-72.

The result in <u>Farmers</u> supports the conclusion that the Georgia statute does not overrule the pro rata method. A specific amendment was required to do that in New Jersey by defining the word "exhaust" to include policies issued in "all other years," an amendment that does not exist in the Georgia statute. <u>See</u> O.C.G.A. § 33-36-3. As Liberty points out, the Georgia insurer insolvency statute has not been amended and could not reasonably be read to override pro rata allocation or to include a requirement that all other policies issued in all other years be exhausted first. <u>See</u> O.C.G.A. § 33-36-14(a). There is no basis, therefore, to conclude that the New York pro rata interpretation of the Liberty policies conflicts with the Georgia insurer insolvency statute or that Lumbermens' orphan share should not be allocated to Fairbanks. Therefore, the Georgia insurer insolvency statute does not lead to a different result and is consistent with the New York pro rata approach.

Fairbanks' motion for summary judgment for a declaration that Liberty is responsible for Lumbermens' orphan share is

denied, and Liberty's motion for summary judgment for a declaration that it is not responsible for the indemnity costs attributed to Lumbermens' orphan share is granted.

### C.

As part of its summary judgment motion, Liberty also asked that this Court order Fairbanks to reimburse Liberty for indemnity amounts Liberty has paid above its allocable pro rata share. The Court declines to decide whether Liberty is entitled to equitable contribution from Fairbanks for the time Fairbanks did not pay its share of indemnity with respect to settlements of the Asbestos Actions after June 3, 2013. There are issues of fact as to how to calculate Fairbanks' alleged underpayment and Liberty's alleged over contribution to indemnity that preclude summary judgment for Liberty. See Pac. Emp'rs Ins. Co. v. Troy Belting & Supply Co., No. 11-cv-912 (TJM), 2015 WL 5708360, at *7 (N.D.N.Y. Sept. 29, 2015).

Therefore, Liberty's motion for summary judgment is granted in part and denied in part. Fairbanks' motion for summary judgment against Liberty is denied.

### IV.

Fairbanks moves for summary judgement against AXA on the initial issues pertaining to AXA's responsibility for indemnity and defense costs and responsibility for Lumbermens' orphan share.

The Fairbanks case against AXA was originally brought in Georgia and was transferred to this Court pursuant to 28 U.S.C. § 1404(a). Therefore, Georgia's choice of law rules should apply. See Van Dusen, 376 U.S. at 639. Under Georgia's traditional choice of law analysis, the law of the place of contracting would govern. Convergys Corp. v. Keener, 582 S.E.2d 84, 86-87 (Ga. 2003). "For insurance contracts, the act of delivery is the last essential act for completion of the insurance contract, and thus the place of delivery is the place where the contract is made." Shorewood Packaging Corp. v. Commercial Union Ins. Co., 865 F. Supp. 1577, 1578 (N.D. Ga. 1994). Unlike the policies issued by the other insurers, the AXA policies were sent to Fairbanks' mailing address in California. Fairbanks' 56.1 Stmt. in AXA mot. ¶¶ 65-66. Fairbanks contends that California law applies to the AXA policies because the policies were delivered to Fairbanks in California, and that California law makes the insurers jointly and severally responsible for Lumbermens' orphan share.

The parties agree that California applies an all sums approach to similarly-worded insurance policies covering injuries with continuing damages. State of Cal. v. Cont'l Ins. Co., 281 P.3d 1000, 1008 (Ca. 2012). However, AXA argues that Georgia choice of law rules only require applying the substantive law of another jurisdiction when construing the

28

statutes of that jurisdiction. <u>Shorewood</u>, 865 F. Supp. at 1578, 1580. Where there is no contrary statute in another relevant state, Georgia applies its own common law. <u>Id.</u> According to AXA, because no California statute is at issue in this case, this Court need not apply California's all sums allocation rule to the AXA policies.

It is unnecessary to reach the issue of whether to apply California's all sums allocation rule to the AXA policies. AXA points out that the choice of law issue is moot because the AXA policies have been exhausted, and AXA no longer seeks reimbursement of the amounts it allegedly over contributed. AXA Mem. of Law in Opp. at 5. Fairbanks has thus far resisted dismissing AXA from this case because it contends that it has not yet verified that AXA's policies have been exhausted. Under the circumstances, it would be unreasonable to determine the application and content of California law when that law potentially applies only to AXA policies and AXA claims that should be dismissed from the case. AXA and Fairbanks should resolve whether the AXA policies have been exhausted and whether AXA should be dismissed from this case, a determination that should be able to be made expeditiously.

## V.

## A.

Fairbanks moves for summary judgment against several insurers, seeking a declaration that the insurers have a duty to pay all of Fairbanks' liabilities and defense costs in connection with the Asbestos Actions where any portion of the alleged injury occurred during the policy periods of the insurance policies, subject only to limits of liability provisions and exhaustion. Fairbanks' motion arises out of the Georgia Action, and thus, Georgia choice of law rules apply. See Van Dusen, 376 U.S. at 639.[7] Under Georgia law, the law of the place of contracting provides the substantive law. Because the insurance policies issued by Hartford, Travelers, National Union, and Fireman's Fund share the common characteristic of having been delivered in Georgia, Georgia substantive law applies. See Shorewood, 865 F. Supp. at 1578; Fairbanks' 56.1 Stmt. on Initial Issues ¶¶ 64, 66, 67, 70.

---

[7] Travelers argues that because the Georgia litigation was transferred to this Court under the first-to-file rule, New York choice of law rules should apply. Travelers cites district court cases that appear to call into question the applicability of the Van Dusen transferor rule in the context of a first-to-file transfer. See Needbasedapps, LLC v. Robbins, 926 F. Supp. 2d 919, 933 (W.D. Tex. 2013). The Second Circuit Court of Appeals and other Courts of Appeals have not weighed in on this issue. See, e.g., Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600 (4th Cir. 2004) ("[W]e need not definitively decide how this thorny issue should be resolved, because the choice-of-law principles of North Carolina and Arkansas are sufficiently similar that the outcome of this dispute would be the same under either set of rules."). As explained below, it is unnecessary to reach this question because Georgia and New York law do not conflict on the substance of the allocation issue. See id.

The Georgia appellate courts have not addressed the issue
of allocation of liability in a progressive injury case.
Fairbanks argues that Georgia courts would apply the all sums
approach based on the language in the policies and the parties'
course of conduct. But Fairbanks has limited evidence of
Georgia's allocation rule or of how an appellate court in
Georgia would rule.

Fairbanks cites Keene Corporation v. Insurance Company of
North America, a decision by the Court of Appeals for the
District of Columbia Circuit, arguing that Georgia courts would
adopt that decision's logic for an all sums approach. 667 F.2d
1034 (D.C. Cir. 1981). According to Fairbanks, because Georgia
requires that insurance contracts be read in accordance with the
reasonable expectations of the insured, Georgia would adopt the
all sums allocation rule to protect policyholders. But there is
no decision from a Georgia court that has accepted the Keene
approach and no basis to believe that Keene would be accepted as
the law in Georgia. Indeed, more persuasive is the fact that the
well-reasoned decisions of the New York Court of Appeals and the
Second Circuit Court of Appeals interpreted similar contract
language to that at issue here as providing for a pro rata
allocation in progressive injury cases.

The insurers oppose the application of an all sums
approach. As the parties recognize, Georgia's appellate courts

have not addressed the proper method of allocation between insurers for asbestos claims, much less the issue of proration to the insured. Ameristeel Corp. v. Emp'rs Mut. Cas. Co., No. 96-cv-85 (HL), 2005 WL 1785283, at *8 (M.D. Ga. July 26, 2005) ("Although [the proration] argument has intuitive appeal, there is no authority for (or against) such allocation under Georgia law."). The only state case on the issue is a trial court order adopting a "pro rata time-on the risk method of allocation" for asbestos-related bodily injury claims because the indemnification provision for "all sums which the Insured shall be obligated to pay  . . . for damages on account of . . . personal injuries . . . caused by or arising out of each occurrence happening anywhere in the world" included a policy period limitation on the "all sums" language which limited an "occurrence" by the term "during the policy period." The insurer was not required to provide coverage for injuries outside the policy period. Nat'l Serv. Indus., Inc. v. St. Paul Guardian Ins. Co., No. 2004-cv-83960, at *2-*3 (Ga. Sup. Ct. June 7, 2005) (Schwartz Decl., Ex. L). "To construe the contracts otherwise would render the policy periods for which the parties contracted meaningless." Id. at *3.

Although Georgia law on the issue of allocation is scant, well established principles of contract interpretation support applying a pro rata approach. "When the policy terms are clear

and unambiguous, [courts] look to the contract alone to determine [the parties'] intent . . . [and] where policy language is ambiguous, [courts] strictly construe any such ambiguity against the insurer as the drafter of the contract." N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co., 631 S.E.2d 726, 729 (Ga. App. 2006). "[U]nambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6 (Ga. 1996).

In this case, the language of the policies is sufficiently unambiguous to require application of the pro rata approach. The National Union policies provide that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . in which this insurance applies, caused by an occurrence." Russey Aff., Dkt. 15-cv-1141, Doc. 112, Ex. D-1, at Fairbanks 012089. The policies issued by Fireman's Fund, Hartford, and Travelers provide that the insurer will pay "those sums that the insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies." Id. Ex. B-1, at Fairbanks 007637 (Fireman's Fund); Ex. C-2, at Fairbanks 009537 (Hartford); Ex. E-1, at Fairbanks 007452 (Travelers).

"Bodily injury" in all the policies must be "bodily injury . . . [that] occurs during the policy period." Id. Ex. B-1, at Fairbanks 007637 (Fireman's Fund); Ex. C-2, at Fairbanks 009537 (Hartford); Ex. D-1, at Fairbanks 012085 (National Union); Ex. E-1, at Fairbanks 007452 (Travelers).

The phrase "during the policy period" qualifies the term "bodily injury" and limits the insurer's liability. The insurer is not liable for all the injury over an indefinite period of time but only for "bodily injury [that] . . . occurs during the policy period." This language is a limitation on the "those sums" and "all sums" language. See Nat'l Serv., 2004-cv-83960, at *3.[8]

Fairbanks argues that the definitions of "bodily injury" and "occurrence" support an all sums approach. Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." E.g., Russey Aff., Dkt. 15-cv-1141, Doc. 112, Ex. B-1 at Fairbanks 007646. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." E.g., id., Ex. E-2, at

---

[8] Travelers and Fireman's Fund point out that their policies do not include the "all sums" language as further support for the pro rata approach. The "those sums" language does not change the analysis or the conclusion that pro rata allocation applies to the Travelers and Fireman's Fund policies because, as with "all sums", "those sums" is limited to sums arising from bodily injury that occurs during the policy period.

Fairbanks 007464; Ex. D-1 at Fairbanks 012085 (National Union).

Although these definitions are very broad, the definitions are

nevertheless limited by the operative part of the policies that

limits what bodily injuries are covered by the insurance policy—

only those that occur "during the policy period." The plain

language of the policies, therefore, provides for pro rata

allocation and must be given full effect. See Cont'l Cas., 466

S.E.2d at 6. Moreover, New York courts have construed nearly

identical provisions and definitions to provide for pro rata

allocation. See J.&S. Supply, 13-cv-4784, at *13; Roman Catholic

Diocese of Brooklyn, 991 N.E.2d at 676.[9]

---

[9] The insurers contend that it is more practical to apply the substantive law
of New York because there is no actual conflict between Georgia and New York
law, because it is unclear what Georgia law is, and because New York is the
forum. Where there is no conflict between the substantive laws of two
relevant jurisdictions, courts in New York apply the law of the forum. IBM,
363 F.3d at 143. Georgia courts apply the same approach. In Yates v. Lowe,
the court applied the substantive law of the forum, Georgia. The court noted
that the law of Florida, the law that would typically control because Florida
was where the accident had taken place, did not address the particular legal
issue at stake, and the court concluded that as a result, there was no
conflict between Georgia and Florida law and therefore Georgia law should
apply. 348 S.E.2d 113, 113-14(Ga. App. 1986); see also Eldon Indus., Inc. v.
Paradies & Co., 397 F. Supp. 535, 538 (N.D. Ga. 1975) ("If Georgia law and
California law are identical on this issue, this is a case involving a 'false
conflict' and it makes no difference which law is applied."). However, with
respect to the Georgia Action that was transferred to this Court, Georgia
remains the "forum." See Van Dusen, 376 U.S. at 639 n.39 ("Of course the
transferee District Court may apply its own rules governing the conduct and
dispatch of cases in its court. We are only concerned here with those state
laws of the transferor State which would significantly affect the outcome of
the case."). In any event, the result under New York law would not be any
different. As detailed above with respect to the Liberty policies, New York
law favors applying pro rata allocation of indemnity to standard form
insurance policies that limit coverage to occurrences with bodily injuries
"during the policy period" because the plain language of these policy
provisions unambiguously limit coverage to the finite period of coverage and
does not extend coverage to all the possible years when the injury could have
occurred. Roman Catholic Diocese of Brooklyn, 991 N.E.2d at 676; Consol.
Edison, 774 N.E.2d at 693-94; Stonewall, 73 F.3d at 1203-04. The National

Fairbanks also argues that provisions that prevent the insured from collecting under multiple insurance policies that are in effect at the same time, "other insurance" provisions, demonstrate that an all sums approach should apply. E.g., Russey Aff., Dkt. 15-cv-1141, Doc. 112, Ex. D-1, at Fairbanks 012086. Fairbanks argues that the "other insurance" provisions operate as a contribution provision for the insurers. This argument has no merit because the "other insurance" provisions are irrelevant to the issue of allocation of indemnity. This provision only applies where policies by multiple insurers apply to the same period of time. See Am. Cas. Co. v. MAG Mut. Ins. Co., 185 F. App'x 921, 925 (11th Cir. 2006); see also Consol. Ed., 774 N.E.2d at 694 ("[Other insurance] clauses apply when two or more policies provide coverage during the same period, and they serve to prevent multiple recoveries from such policies."). In this case, the issue is how to apportion liability among insurers who insured Fairbanks at different points in time, not about policies in effect during the same policy periods.

---

Union policies, for example, likewise, provide that the insurer must provide coverage for "bodily injury . . . which occurs during the policy period" and that is caused by an occurrence. Russey Aff. Dkt. 15-cv-1141, Doc. 112, Ex. D-1, at Fairbanks 012085, 012089. Therefore, under New York law, as under Georgia law, the insurance policies in this case would be interpreted to allocate responsibility to each insurer on a pro rata basis for the time each insurer was on the risk. See Roman Catholic Diocese of Brooklyn, 991 N.E.2d at 676; Consol. Edison, 774 N.E.2d at 693-94; Stonewall, 73 F.3d at 1203-04.

Because the terms of the policies are unambiguous, it is unnecessary to consider the conduct of the parties. See Kelly v. Stafford Tractor Co., No. 1:07-cv-0089 (JOF), 2009 WL 425356, at *13 (N.D. Ga. Feb. 19, 2009). Moreover, as discussed above, the parties' past course of conduct does not support an all sums approach. Fairbanks contributed to settlements and expenses between 2002 and 2005. See Fairbanks' 56.1 Stmt. on Initial Issues ¶¶ 30-32 (Fairbanks contributed about 49% of the indemnity costs); Gottsche Aff. Ex. B (52% of indemnity costs attributed to Fairbanks). The insurers entered into a cost-sharing arrangement in 2005 that excluded Fairbanks but did so under a full reservation of rights. Willard Aff., Exs. 18-21; Gottsche Aff. Ex. A, at 9-10. Fairbanks acknowledged this reservation of rights. Gottsche Aff. Ex. D; Willard Aff. Ex. 26. And while the insurers retain the right to settle cases, as was the case with Liberty, Fairbanks agreed to give the insurers the discretion to settle actions, and Fairbanks does not rely on any authority that would suggest this discretion overcomes the plain language of the policies to allocate indemnity on a pro rata basis. The record shows that the insurers and Fairbanks disputed whether the insurers are liable on a pro rata or joint and several liability basis. Willard Aff., Exs. 23-24. Therefore, Fairbanks' motion for summary judgment seeking a declaration

that the insurers are jointly and severally liable for the
indemnity costs is denied.

### B.

In its motion for summary judgment, Fairbanks also argues
that even if pro rata allocation applies to the insurers'
policies, Fairbanks is still not responsible for Lumbermens'
orphan share under the Georgia insurer insolvency statute. As
discussed above, the insolvency statute is not inconsistent with
pro rata allocation. Under Section 33-36-14 of the Georgia Code,
whether an insurer is liable for Lumbermens' orphan share will
depend on whether the insurer was insuring Fairbanks in the same
years that Lumbermens was insuring Fairbanks. If the periods of
coverage for a solvent insurer and Lumbermens overlap, then the
solvent insurer's policy "shall be treated as primary coverage."
O.C.G.A. § 33-36-14(a). Fairbanks has not shown that the
insurers insured Fairbanks in the same time period as
Lumbermens.[10] Fairbanks' motion for summary judgment against the
insurers cannot be granted on the basis that they are liable for
Lumbermens' orphan share.

### C.

With respect to defense costs, the Court declines to reach
the issue of allocation. The parties' briefing did not focus on

---

[10] The only insurer whose policy possibly overlapped with a Lumbermens policy
is National Union, and that overlap was allegedly no longer than a month, and
even that overlap is not clear on the current record.

the issue of whether allocation of defense costs follows allocation of indemnity costs and did not address the relevant provisions regarding defense costs in each insurer's policies. In opposition to Fairbanks' motion for a declaration that the insurers are jointly and severally liable for defense costs, Travelers argued that if pro rata allocation applies to indemnity then the same methodology should apply to defense costs. Fairbanks did not respond to this argument. Travelers cites New York law only, not Georgia law which applies to the insurers' policies. The record is insufficiently developed to determine what defense costs the solvent insurers should bear or have re-allocated as a result of Lumbermens' insolvency.

Fairbanks' motion for summary judgment against National Union, Travelers, Hartford, and Fireman's Fund on the issue of defense costs is therefore denied without prejudice.

### D.

In response to Fairbanks' motion for partial summary judgment, Hartford points out that its insurance policies have been exhausted and that the allocation issue is moot as to Hartford's liability for indemnity. Fairbanks argues that given the limited nature of the pending motions for summary judgment, this Court should not consider Hartford's exhaustion issue. Fairbanks does not deny that the Hartford policies have been exhausted or that Harford's policies provide that the company is

not obligated to pay to defend a suit after the applicable limit
of the company's liability has been exhausted by the payment of
judgments or settlements. Russey Aff., Dkt. 15-cv-1141, Doc.
112, Ex. C-2, at Fairbanks 009537. Under Georgia law, such
explicit policy language could be construed as terminating an
insurer's duty to defend. See Liberty Mut. Ins. Co. v. Mead
Corp., 131 S.E.2d 534, 536 (Ga. 1963). The exhaustion issues
were not part of the summary judgment issues specified in the
Case Management Plan, but it would be a waste of all the
parties' resources to keep Hartford in this litigation if its
policies have in fact been exhausted. Fairbanks and Hartford
should resolve this issue promptly. Therefore, Fairbanks' motion
for summary judgment against Hartford is denied without
prejudice on this ground as well.

## VI.

### A.

Fireman's Fund and National Union also moved for summary
judgment against Fairbanks, seeking a declaration that they are
not responsible for Lumbermens' orphan share and that they are
only liable on a pro rata basis for indemnity costs. For the
reasons explained above denying Fairbanks' motion for summary
judgment against the insurers, Fireman's Fund and National Union
are entitled to a declaration that they are only responsible on
a pro rata basis for indemnity costs under Georgia law.

With respect to Lumbermens' orphan share, issues of fact preclude summary judgment in National Union's favor. There is a question of fact as to whether National Union issued a policy that overlapped with a Lumbermens policy in 1987. Compare Willard Aff. ¶ 16 with National Union's 56.1 Resp. ¶ 62. However, as was the case with Liberty, there is no evidence that Fireman's Fund issued a policy that overlapped with a Lumbermens policy. Therefore, Fireman's Fund was not on the risk at the same time as Lumbermens and could not be a primary insurer under the Georgia insurer insolvency statute. Therefore, National Union's motion for summary judgment declaring that Lumbermens' orphan share must be attributed to Fairbanks is denied without prejudice. Fireman's Fund's motion for a declaration that it is not responsible for Lumbermens' orphan share is granted.

With respect to defense costs, National Union's and Fireman's Fund's motions for partial summary judgment declaring that they are not liable for defense costs cannot be granted. The factual and legal record have not been developed and the motions for summary judgment on the issue are denied without prejudice.

**B.**

Fireman's Fund separately sought a declaration that it has no obligation to indemnify or to defend Fairbanks under four Fireman's Fund excess policies because each policy contains a

41

broad asbestos exclusion clause. With respect to the exclusion provision, a court applying Georgia law must enforce the terms of a clear and unambiguous contract in accordance with their plain meaning. Cont'l Cas., 466 S.E.2d at 6. Based on the plain language of the policies, the exclusion provision in the policies carves out liability "arising, in whole or in part, out of or in any way related to asbestos." Kasbohm Aff. Ex. 6 at 16. Fairbanks does not dispute that the excess policies exclude coverage for asbestos liability; rather, Fairbanks argues that complaints that do not allege injury solely from asbestos exposure should still be covered by the policies. Fireman's Fund's 56.1 Stmt. ¶ 3; Fairbanks' 56.1 Resp. to Fireman's Mot. ¶ 3. But the Asbestos Actions at issue in Fairbanks' action against Fireman's Fund all allege liability based, at least in part, on exposure to asbestos. Fairbanks points to no action that should be exempt from the exclusion. In opposing a motion for summary judgment, Fairbanks must come forward with more than conjectural speculation. Fireman's Fund does not have a duty to indemnify or defend Fairbanks in the Asbestos Action under the policies that exclude asbestos claims from coverage.

Therefore, Fireman's Fund's motion for summary judgment is granted with respect to the asbestos exclusion in the excess policies.

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. For the foregoing reasons, Liberty's motion for summary judgment is granted in part and denied in part. Fairbanks' motion for summary judgment against Liberty is denied. Fairbanks' motion for summary judgment against AXA is denied without prejudice. Fairbanks' motion for summary judgment against certain insurers is denied. National Union's motion for summary judgment is granted in part and denied in part. Fireman's Fund's motion for summary judgment is granted in part and denied in part. The Clerk of Court is directed to close all pending motions.

**SO ORDERED.**

**Dated:    New York, New York**
**          March 21, 2016**

_____/s/_____

**John G. Koeltl**
**United States District Judge**